UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF WISCONSIN

A.H., by her Legal Guardian Patanne Coffey
28 Cordelia Crescent
Madison, WI 53704.

Z.H., a minor, by her Parent and Legal Guardian Anna Hauser
645 E. Johnson St. # 202
Madison, WI 53704,

    PLAINTIFFS                         Case No. 22-cv-134

v.

Madison Metropolitan School District
545 W. Dayton St., Room 110
Madison, WI 53703

Heidi Tepp
909 Devonshire Ct.
Stoughton, WI 53589

Joe Anderson
1200 Snowdon Drive
Knoxville, TN 37912

Joseph A. Ballas
7130 Lindfield Road
Madison, WI 53719

David G. Kapp
6903 Milwaukee St.,
Madison, WI 53718

Luke Frame
4552 N. Old Kennedy Road
Milton, WI 35563

Mark Brown
545 W. Dayton St.
Madison, WI 53703

Mathew Bell
5201 Nanberry Dr.
Fitchburg, WI 57311

1

Jeff Knutsen
2129 Keyes Ave.
Madison, WI 53711

Haley A. Gausmann
611 E. Red Oak Trail
McFarland, WI 53558

John Hagen
2332 Lynwood Drive
City of Sun Prairie, WI 53950

Jeff Fischer
318 N. Kerch St.
Brooklyn, WI 53251,

    DEFENDANTS

## COMPLAINT

Plaintiffs allege the following Complaint:

### I. NATURE OF ACTION

1. Plaintiffs bring this civil action under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and Wis. Stat. § 999.50(2)(am)1. in order to obtain damages, including punitive damages, any appropriate declaratory or injunctive relief, together with their reasonable attorney's fees and costs, for the injuries arising from the Defendants' surreptitious video surveillance of their unclothed bodies between September 6, 2019 and July, 2020, in a private changing area in Room 127 located inside of Madison East High School.

2. As shown below, this case involves the placement of hidden cameras by employees of Defendant Madison Metropolitan School District which were placed in an area where the plaintiffs and others were in the normal course of the school day, unclothed.

## II.   JURISDICTION AND VENUE

3. The United States District Court for the Western District of Wisconsin has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction), and over the state claim pursuant to § 1367 (pendant state claim jurisdiction).

4. The United States District Court for the Western District of Wisconsin has jurisdiction over this action because the Plaintiff's claims arose within the geographic boundaries of the Western District of Wisconsin within the meaning of § 1391(b)(2).

## III.   PARTIES

5. At all times material hereto, Plaintiff A.H. was a minor resident of the State of Wisconsin residing at 28 Cordelia Crescent, Madison, WI 53704.

6. At all times material hereto, Plaintiff, Z.H. was a minor resident of the State of Wisconsin residing at 645 E. Johnson St. # 202, Madison, WI 53704.

7. Plaintiff Patanne Coffey is an adult resident of the State of Wisconsin who resides at 28 Cordelia Crescent, Madison, WI 53704. Pattane Coffey is the parent and legal guardian of A.H. and files this action on behalf of A.H. in this Court. A.H. was a minor and a high school student attending East High School in the Madison Metropolitan School District at the time of the occurrence hereinafter described.

8. Plaintiff Anna Hauser is an adult resident of the State of Wisconsin who resides at 645 E. Johnson St. # 202, Madison, WI 53704. Anna Hauser is the parent and legal guardian of Z.H., and files this action on behalf of her minor child Z.H. in this Court. Z.H. was a high school student attending East High School in the Madison Metropolitan School District at the time of the occurrence hereinafter described.

9. Defendant Madison Metropolitan School District ("MMSD") is a Wisconsin unit of local government located at 545 W. Dayton Street, Madison, WI 53703-1967, with the capacity to sue and be sued in this Court, and receives federal funding as a public education institution.

10. Defendant Heidi Tepp ("Tepp") is an adult resident of Wisconsin, who at all times material hereto was employed by MMSD as the Director of Labor Relations.

11. Tepp was responsible for approving the placement and use of the hidden cameras that are the subject of this complaint, inside of hollowed-out smoke detectors in Rooms 127 and B32 H of Madison East High School, in an attempt to catch a third-shift custodian sleeping on the job.

12. Defendant Joe Anderson ("Anderson") is an adult resident of the State of Tennessee, who at all times material hereto was an adult resident of the State of Wisconsin, employed by MMSD as an Electrical Engineer.

13. Anderson conceived of the idea to place the hidden cameras in certain locations around Madison East High School in an attempt to catch a third-shift custodian sleeping on the job, and directed one of East High School's electricians, Luke Frame, to install the hidden cameras in Rooms 127 and B32 H.

14. Anderson was also one of only three individuals who could access the live-stream of the covert video recordings captured by the secret cameras in Rooms 127 and B32 H.

15. Defendant David Kapp ("Kapp") is an adult resident of the State of Wisconsin, who at all times material hereto was employed by MMSD as the Building Services Assistant Supervisor.

16. Kapp sought permission from MMSD "legal" and Tepp, to install the hidden cameras in East high School, and directed an MMSD electrician and Forward Electric to install the cameras at Madison East High School in Rooms 127 and B32 H.

17. Kapp admitted to viewing the video footage captured by the hidden cameras in Rooms 127 and B32 H and was one of the individuals who had access to the footage.

18. Defendant Joseph Balles ("Balles") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as a Security Director at East High School.

19. Balles was one of the individuals who had access to the video footage captured by the cameras in Rooms 127 and B32 H.

20. Defendant Luke Frame ("Frame") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as an electrician at Madison East High School.

21. Frame was responsible for installing the hidden cameras at Madison East High School in Rooms 127 and B32 H.

22. Defendant Mark Brown ("Brown") is an adult resident of the State of Wisconsin who at all times material to this Complaint was employed by MMSD as the Head of Security.

23. Brown was responsible for coordinating the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

24. Defendant Mathew Bell ("Bell") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as General Counsel.

25. Bell was responsible for approving the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

26. Defendant Jeff Knutsen ("Knutsen") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD.

27. Knutsen was one of several individuals responsible for approving the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

28. Upon information and belief, Defendant Haley A. Gausmann ("Gausmann") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD.

29. Gausmann was one of several individuals responsible for approving the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

30. Defendant John Hagen ("Hagen") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as a Custodial Supervisor.

31. Hagen was one of several individuals responsible for coordinating the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

32. Defendant Jeff Fischer ("Fischer") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as a Custodial Supervisor.

33. Fischer was one of several individuals responsible for coordinating the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

34. At all times material hereto, each Defendant described in paragraphs 8 through 31 was acting within the scope of his or her employment with MMSD and acting under color of state law. Each such defendant is sued in their individual capacity.

### IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

35. Paragraphs 1 through 34 are re-alleged and incorporated by reference therein.

36. MMSD has maintained a pattern and practice of installing and using hidden cameras, housed in inconspicuous devices, to surreptitiously record its students and employees.

37. Upon information and belief, secret surveillance cameras have been used at Madison Schools over the course of the past ten years, apparently in violation of express MMSD policy.

38. MMSD's pattern and practice involved approving the placement of hidden cameras in places where students maintained a reasonable expectation of privacy in their unclothed bodies.

39. The surreptitious surveillance giving rise to this Complaint, provides one such example of MMSD's pattern and practice.

40. On or about Saturday August 24, 2019, Anderson arrived at Madison East High School in the early morning hours to complete an assignment.

41. Anderson observed what he thought was a third-shift custodian sleeping in the backseat of his vehicle during his 10:00 p.m. to 6:00 a.m. shift.

42. Anderson subsequently told Kapp and Balles of his suspicion.

43. Between September 3 and September 6, 2019, Anderson, Kapp, and Balles, sought approval from various MMSD officials, including Tepp and MMSD Legal, to place hidden cameras in locations around East High School to catch the third-shift custodian sleeping on the job.

44. Between September 3 and September 6, 2019, Anderson, Kapp, and Balles collaborated with various employees of MMSD, including Defendants Hagen, Fischer and Brown in deciding where to place the hidden cameras.

45. Tepp, Knutsen, Gausmann, and MMSD General Counsel Bell, gave Anderson, Kapp, and Balles approval to install the hidden cameras in hollowed out smoke detectors in at least two locations within East High School: (1) inside a coach's office (a room known as B32 H) in a

boy's locker room; and, (2) inside Room 127, a room used for working with students with disabilities.

46. Room 127 of East High School contained a changing cot and was used by MMSD employees to work with students with disabilities as a bathroom and changing area. The use for which Room 127 was put to was something which all of the Defendants knew or which they recklessly disregarded.

47. Plaintiffs A.H., and Z.H. used Room 127 for changing clothes and undergarments during the school day, and as a bathroom. At times during these processes, the Plaintiffs would be unclothed, having their undergarments changed, and having feces and urine cleaned off of their bodies.

48. Based on its express policies and the actions of MMSD and its employees, MMSD and its employees led the Plaintiffs to believe that Room 127 was a private place where the Plaintiffs could change and not be observed or recorded. Room 127 was a locked room, only accessible by use of a key. The window on the door of Room 127 was frosted and could not be seen through. Plaintiffs also had a reasonable expectation that they would not be observed, filmed, or recorded in Room 127, and that there would be no hidden cameras present in Room 127.

49. Between September 3 and September 6, 2019, Anderson, Kapp, and Balles collaborated with several MMSD employees including Frame, Gausmann, Knutson, and one or more employees of a private contractor, Forward Electric, to place the hidden cameras in Rooms 127 and B32 H.

50. On September 6, 2019, Frame installed the hidden cameras in hollowed out smoke detectors in Rooms 127 and B32 H.

51. After Frame installed the cameras in the smoke detectors, employees from Forward Electric came to Madison East High School to "hardwire" the cameras. Frame then gave Forward Electric a laptop to aim the cameras at the desired targets. Forward Electric aimed the hidden camera in Room 127 at a cot in such a way as to capture video recordings of students with disabilities, including the Plaintiffs A.H., Z.H., in states of undress while on or near the cot.

52. On September 6, 2019, MMSD employee Alex Blohowiak set up an IP address so that the images captured by the cameras could be viewed live and remotely by anyone who knew or determined the appropriate IP address and knew or could determine what the password was.

53. The hidden cameras were also connected to the MMSD computer system.

54. The hidden cameras were always recording.

55. On September 6, 2019, Anderson gave Balles and Kapp the IP address and password to access the cameras' live-feed and recorded images.

56. Anderson tasked Kapp with viewing the recorded video footage captured by the cameras.

57. Kapp viewed the video footage captured by the secret cameras in Room 127 and B32 H.

58. Between at least September 6, 2019, and September 30, 2019, Plaintiffs A.H. and Z.H. used Room 127 and would have been captured by the secret camera in Room 127 in various states of undress.

59. During this time, Plaintiffs A.H. and Z.H. were minors.

60. It is unknown how long the cameras in Room 127 and B32 H were recording.

61. Even after MMSD stopped investigating the allegedly sleeping employee in fall of 2019, it left the secret cameras in place.

62. Frame told Madison Police that he "took the cameras out of service" sometime in 2020, but left them in place and wired so that they still produced a live feed even though they were no longer recording. Frame told police that to view the live feed one would have to know the correct IP address and password.

63. Upon information and belief, between September 2019, and July of 2020, none of the Defendants revealed the existence of the hidden cameras or the fact of the filming to Madison East High School parents or teachers.

64. It is unknown whether then East High School Principal Mike Hernandez, who took a job in the District's central administration offices in the Fall of 2019, was ever made aware of the secret cameras.

65. Upon information and belief, none of the involved Defendants disclosed the existence of the cameras to Principal Brendan Kearney, who became interim principle in the Fall of 2019.

66. In fact, on or around December 12, 2019, at 2:30 p.m., State of Wisconsin Department of Justice Division of Criminal Investigation (DOJ-DCI) Special Agent Crowe, who was investigating crimes related to the secret cameras that had been placed by former MMSD employee David Krutchen on DECA field trips, conducted a search at East High School for the purpose, in part, of looking for surreptitious recording devices or any other evidence that would be relevant to David Krutchen's unlawful acts.

67. Defendant Balles "assisted" Special Agent Crowe during the law enforcement search of school grounds.

68. Balles knew of the surreptitious recording devices, and their location in hollowed-out smoke detectors, in Room 127 and B32 H.

69. Special Agent Crowe did not discover the hidden cameras, and, the hidden cameras would not be discovered until months later in July of 2020.

70. In July of 2020, several MMSD employees were installing a new camera system at East High School and discovered the hidden cameras in Room 127 and B32 H.

71. In July of 2020, the cameras in Room 127 and B32 H were allegedly fully removed. However, the hollowed-out smoke detectors in which they were concealed were apparently not removed or replaced.

72. On January 8, 2021, an MMSD Employee, Scott Wolfe stumbled upon a hollowed out-smoke detector underneath a table in Room B32 H. At that time, Scott Wolfe noticed a 2-inch hole drilled into the ceiling.

73. On January 8, 2021, Scott Wolfe informed Madison East High School Principal Kearney of his discovery.

74. On January 8, 2021, Principal Kearney decided police involvement would be appropriate and called Madison Police to investigate.

75. At that time, MMSD launched its own "internal investigation" of the hidden cameras at East High School.

76. MMSD engaged a private law firm, MWH Law Group LLP, and spent at least $30,000 to conduct an "investigation" into MMSD's use of covert surveillance devices in Rooms 127 and B3H, so that it could hide the results of the investigation from the public.

77. On May 6, 2021, Dr. Carlton Jenkins, MMSD Superintendent, emailed East High School parents, notifying them that MWH's "investigation" had concluded and summarizing MWH's findings.

## V. VIOLATIONS OF LAW

**A.  42 U.S.C. § 1983: Unreasonable Search in Violation of the Fourth Amendment, or alternatively Invasion of Privacy in Violation of the Fourteenth Amendment, Against All the Individual Defendants**

78. Paragraphs 1 through 77 are re-alleged and incorporated by reference herein.

79. At all times material hereto, the individual Defendants were "persons" for the purpose of 42 U.S.C. § 1983.

80. At all times material hereto, the individual Defendants acted under the color of law.

81. At all times material hereto, the individual Defendants acted within the scope of their respective employment and were actuated by a purpose to serve their employer, MMSD.

82. At all times material hereto, Plaintiffs A.H. and Z.H. had a constitutionally protected right to be free from unreasonable searches and invasions of their protected privacy interests while under the tutelage of MMSD. This right is an obvious one that was or should have been known to all Defendants.

83. All of the individual Defendants knew the purpose of Room 127 and knew the purpose for which Room 127 was used.

84. After exchanging emails containing maps of East High School, the Defendants knowingly selected Room 127 as a location to install one of the hidden cameras.

85. The Defendants knowingly aimed the hidden camera in Room 127 at a cot that A.H. and Z.H. used for changing clothes, undergarments, and toileting purposes.

86. Plaintiffs A.H. and Z.H. believed that Room 127 was a place where they could maintain a reasonable expectation of privacy in their unclothed bodies.

87. Plaintiffs A.H. and Z.H. did not reasonably expect to be secretly recorded in states of undress while engaged in toileting functions

88. Plaintiffs A.H. and Z.H. were in Room 127 on many occasions, in states of undress and while engaged in toileting functions, when the camera in Room 127 was operating and recording.

89. The recordings of A.H. and Z.H. were available to anyone who knew the correct IP address and could determine the password.

90. By placing hidden cameras in Room 127 – a place the Defendants knew the Plaintiffs and other disabled students used to change clothes and undergarments – the Defendants violated the Plaintiffs' Fourteenth Amendment right to be free from covert surveillance of their unclothed bodies in a location where they possessed a reasonable expectation of privacy.

91. By placing hidden cameras in Room 127, the Defendants also engaged in an unreasonable search of Plaintiffs A.H. and Z.H., in violation of the Fourth Amendment.

92. The Defendants' placement of the hidden camera in Room 127 was not justified at its inception by any compelling necessity, such as concerns about student safety.

93. MMSD's invasion of Plaintiffs A.H. and Z.H.'s privacy was wholly excessive in scope when compared to the purpose of MMSD's search: catching a custodian sleeping on the job after suspicion arose that he may have sleeping during work hours in his car.

94. After learning that they had been secretly recorded in states of undress and engaged in toileting functions, Plaintiffs A.H. and Z.H., experienced profound and severe emotional distress, pain, anxiety, and suffering after learning that they had been secretly recorded while they were naked, changed and while they were toileting resulting from Defendants' unreasonable search and invasion into their privacy

95. Defendant MMSD is required to indemnify the individual Defendants pursuant to Wis. Stat. § 895.46 for any judgment entered against them because the Defendants were all acting within the scope of their employment when they committed these alleged acts and omissions.

**B.  42 U.S.C. § 1983: Monell Claim Against MMSD**

96. Paragraphs 1 through 95 are realleged and incorporated by reference herein.

97. At all times material hereto, MMSD was a "person" for the purpose of 42 U.S.C. § 1983.

98. MMSD designated Room 127 as a private place where students with disabilities could change clothes and undergarments.

99. MMSD led Plaintiffs to believe that Room 127 was a place where they could maintain a reasonable expectation of privacy in their unclothed bodies, and where they could reasonably expect to be free from covert surveillance.

100. At all times material hereto, MMSD had in place Board of Education Policies 6702 and 6710, both of which expressly prohibited, albeit in broad and vague language, any person from using covert cameras without approval from the superintendent, or *any* camera, concealed or visible, to capture, record, transmit, or transfer an image or representation of a nude or partially nude person who is in any locker room, restroom, or designated changing area.

101. Board Policy 6702 provided that "cameras will be visible unless otherwise authorized by the Superintendent." And, that "[c]ameras shall not be placed in a restroom or locker room."

102. Board Policy 6710 provided that "No person may use a camera, video recorder, cell phone, or any other recording device at any time to capture, record, transmit, or transfer an image

or representation of a nude or partially nude person who is in any locker room, restroom, or other designated changing area."

103. Upon information and belief, despite these express policies, MMSD acted with deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. by maintaining an informal pattern and practice of sanctioning the use of covert surveillance devices at Madison Public Schools.

104. In fact, according to a police report attributing statements to Attorney Tepp, secret surveillance cameras had been used at East High school in the "past ten years."

105. Indeed prior to the covert surveillance giving rise to this litigation, former MMSD employee David Krutchen, the DECA field trip coordinator, had used the discretion vested in him by these broad and vague Board Policy directives, to supervise some of the students he was chaperoning on extended, overnight, DECA field trips, in part, by installing surreptitious surveillance cameras hidden in inconspicuous devices, such as hollowed-out smoke detectors, in students' hotel rooms, including in their hotel bathrooms, where they would reasonably be expected to appear in states of undress.

106. David Krutchen admitted to employing this practice for approximately seven years, beginning in or around 2014.

107. David Krutchen chaperoned the Madison East High School DECA field trip to Minneapolis, Minnesota, from December 6, 2019, through December 8, 2019. On the last evening of this field trip, East High School students discovered one of David Krutchen's secret cameras recording devices in their hotel bathrooms. And, after reporting their discovery to David Krutchen and another MMSD employee chaperoning the field trip, Mr. Fanning, both of whom failed to

report this discovery to police, several of the students' parents and hotel staff called the local Minneapolis police, on behalf of the students.

108.   David Krutchen's covert surveillance during the December 6-8, 2019, Minneapolis DECA field trip would ultimately culminate in his arrest and MMSD conducting an internal investigation into his alleged wrongdoing.

109.   The investigation, led by Tepp, found no wrongdoing on behalf of the District, and the only wrongdoing it found on behalf of David Krutchen was that he had violated MMSD's Social Media and Digital Communications Guidelines for Staff by using his personal cell phone to communicate with students and families while on field trips.

110.   MMSD did not discipline or terminate Mr. Krutchen.

111.   Moreover, despite the aforementioned policies, Tepp and MMSD's general counsel expressly authorized the placement of the hidden cameras in Room 127 and B32 H.

112.   MMSD had in place an actual pattern and practice of using hidden surveillance cameras as a method of supervision, in places where students, including Plaintiffs A.H. and Z.H. had a reasonable expectation of privacy in their unclothed bodies.

113.   Upon information and belief, despite these express policies, MMSD also acted with deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. by failing to train and supervise their respective employees on these express policies, and for failing to train and supervise their employees to not infringe Plaintiffs' constitutionally protected rights to be free from unreasonable searches and invasions of privacy.

114.   Upon information and belief, MMSD also acted with deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. by delegating final policymaking

authority to Tepp, and MMSD legal, to approve the use of covert video surveillance at Madison Schools in locations where students possessed a reasonable expectation of privacy.

115. For example, in an email dated September 6, 2019, with the subject designated as "BOE Policy on Cameras," from Anderson to Balles, Tepp, Kapp, and others, Anderson stated:

> Only with prior approval can a camera that does not look like a camera be deployed. We have two going up at East next weekend. Their video will be placed on the BS DVR, which has limited access to Jo, Joe, Dave, and the electric shop . . . This project was approved by Heidi. This process will be used for each time we put these cameras this team know but it is the intent staff at the school do not know these cameras are in place.

116. MMSD's deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. was the moving force behind the violations of their constitutionally protected rights.

117. As a direct and proximate cause of the Defendants' actions and omissions, Plaintiffs A.H., Z.H., Patanne Coffey, and Anna Hauser, experienced profound and severe emotional distress, pain, anxiety, and suffering.

**C.    Violation of Wis. Stat. § 995.50(2)(a)**

118. Paragraphs 1 through 117 are re-alleged and incorporated by reference herein.

119. The Defendants knew the purpose of Room 127.

120. The Defendants led the Plaintiffs to believe that Room 127 was a private place where they could change their clothing free from surveillance by covert recording devices.

121. Plaintiffs A.H. and Z.H. possessed a reasonable expectation of privacy in their unclothed bodies while in Room 127.

122. The Defendants knowingly aimed a hidden video camera at the cot in Room 127 used by Plaintiffs A.H. and Z.H. while in states of undress.

123. After the Defendants' installation of the camera on or about September 6, 2019, the camera in Room 127 was always recording.

124. Plaintiffs A.H. and Z.H. were in Room 127 when the cameras were functional and recording.

125. The images captured by the camera in Room 127 were accessible to anyone who knew the correct I.P. address and could determine the password, and Kapp did in fact access the recorded images.

126. The Defendants intentionally intruded upon the privacy of Plaintiffs A.H. and Z.H. in a manner that was highly offensive to a reasonable person, and the intrusion occurred in a location where the Plaintiffs, and any reasonable individual, would possess a reasonable expectation of privacy, in violation of Wis. Stat. § 995.50(2)(a).

127. As a direct and proximate cause of the Defendants' actions and omissions, Plaintiffs A.H., Z.H., Patanne Coffey, and Anna Hauser, experienced profound and severe emotional distress, pain, anxiety, and suffering.

128. Defendant MMSD is required to indemnify the individual Defendants pursuant to Wis. Stat. § 895.46 for any judgment entered against them because the Defendants were all acting within the scope of their employment when they committed these acts and omissions.

## VI.     DAMAGES

**1.     Compensatory or Presumed Damages**

129. By virtue of the unlawful actions alleged above, Plaintiffs A.H. and Z.H. sustained emotional distress, pain and suffering, public humiliation and embarrassment, and other damages for which each of them should be compensated in an amount deemed just by the Court.

**2.     Punitive Damages**

130. Because of the acts of the individual defendants herein alleged were carried out maliciously or with reckless disregard for the Plaintiffs' fundamental rights, the Plaintiffs seek an

award of punitive damages against the individual defendants to deter them, and others similarly situated, from committing similar wrongful acts in the future.

## VII. CONDITIONS PRECEDENT

131. All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment as follows:

A. Presumed damages in an amount to be determined by a jury;

B. In the alternative to presumed damages, compensatory damages in amount to fairly compensate the plaintiffs for their injuries;

C. Punitive damages;

D. All costs, disbursements, and attorney's fees in this matter; and

E. Such other and further relief as the court deems just and equitable.

## IX. JURY DEMAND

Plaintiffs demand a jury trial on all issues.

Dated this 10th day of March, 2022.

LAWTON & CATES, S.C.

By: *Electronically signed by Terrence M. Polich*
Terrence M. Polich
State Bar No.: 1031375
Dixon R. Gahnz
State Bar No. 1024367
Attorneys for Plaintiffs

P.O. Box 2965
345 W. Washington Ave., Suite 201
Madison, WI 53703
P: (608) 282-6200
F: (608) 282-6252
tpolich@lawtoncates.com
dgahnz@lawtoncates.com