## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

---

**A.H., by her Legal Guardian Patanne Coffey, and**
**Z.H., a minor, by her Parent and Legal Guardian Anna Hauser,**

       Plaintiffs,

                                     **Case No. 3:22-cv-00134-slc**

v.

**MADISON METROPOLITIAN SCHOOL DISTRICT,**
**HEIDI TEPP,**
**JOE ANDERSON,**
**JOSEPH A. BALLAS,**
**DAVID G. KAPP,**
**LUKE FRAME,**
**MARK BROWN,**
**MATHEW BELL,**
**JEFF KNUTSON,**
**HALEY A. GAUSMANN,**
**JOHN HAGEN, and**
**JEFF FISCHER,**

       Defendants.

---

## DEFENDANT MADISON METROPOLITAN SCHOOL DISTRICT'S
## AMENDED ANSWER AND AFFIRMATIVE DEFENSES

---

Defendant Madison Metropolitan School District ("MMSD"), by and through its attorneys, MWH Law Group LLP, hereby sets forth the following as and for its Amended Answer and Affirmative Defenses to the Complaint filed by Plaintiffs A.H., by her Legal Guardian Patanne Coffey and Z.H., a minor, by her Parent and Legal Guardian Anna Hauser ("Plaintiffs"), denying every allegation of the Complaint except as expressly admitted or qualified herein.

## I. NATURE OF ACTION

1.      Plaintiffs bring this civil action under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and Wis. Stat. § 999.50(2)(am)1. in order to obtain damages, including punitive damages, any appropriate declaratory or injunctive relief, together with their reasonable attorney's fees and costs, for the injuries arising from the Defendants' surreptitious video surveillance of their unclothed bodies between September 6, 2019 and July, 2020, in a private changing area in Room 127 located inside of Madison East High School.

**Answer:**   **In answering paragraph 1 of the Complaint, MMSD denies that it engaged in surreptitious video surveillance of Plaintiffs' unclothed bodies at any time or in any location. MMSD further denies that it violated any law, that Plaintiffs were damaged by any action of MMSD, and that Plaintiffs are entitled to any of the relief requested in the Complaint. MMSD neither admits nor denies the remaining allegations in that they call for legal conclusions requiring no response.**

2.      As shown below, this case involves the placement of hidden cameras by employees of Defendant Madison Metropolitan School District which were placed in an area where the plaintiffs and others were in the normal course of the school day, unclothed.

**Answer:**   **In answering paragraph 2 of the Complaint, MMSD admits that Plaintiffs make the stated allegations and denies that the two cameras installed in Room 127 and in the Coach's office located in Gym Y 101B at East High School were set to record during school hours. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

## II. JURISDICTION AND VENUE

3.      The United States District Court for the Western District of Wisconsin has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question jurisdiction) and 1343(a)(3) (42 U.S.C. § 1983 jurisdiction), and over the state claim pursuant to § 1367 (pendant state claim jurisdiction).

**Answer:   In answering paragraph 3 of the Complaint, MMSD admits that Plaintiffs purport to assert a claim under 42 U.S.C. 1983 and Wis. Stat. § 999.50(2)(am)1. MMSD denies that it violated any law, that Plaintiffs were damaged by any action of it, and that Plaintiffs are entitled to any of the relief requested in the Complaint. MMSD neither admits nor denies the remaining allegations in that they call for legal conclusions requiring no response.**

4.      The United States District Court for the Western District of Wisconsin has jurisdiction over this action because the Plaintiffs' claims arose within the geographic boundaries of the Western District of Wisconsin within the meaning of § 1391(b)(2).

**Answer:   In answering paragraph 4 of the Complaint, MMSD admits that the allegations contained in Plaintiffs' Complaint, if true, would have occurred within the Western District of Wisconsin. MMSD denies that it committed any act or omission giving rise to the exercise of venue there.**

## III. PARTIES

5.      At all times material hereto, Plaintiff A.H. was a minor resident of the State of Wisconsin residing at 28 Cordelia Crescent, Madison, WI 53704.

**Answer:   In answering paragraph 5 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity**

**of the allegations.**

6.     At all times material hereto, Plaintiff, Z.H. was a minor resident of the State of Wisconsin residing at 645 E. Johnson St. # 202, Madison, WI 53704.

**<u>Answer</u>:   In answering paragraph 6 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

7.     Plaintiff Patanne Coffey is an adult resident of the State of Wisconsin who resides at 28 Cordelia Crescent, Madison, WI 53704. Pattane Coffey is the parent and legal guardian of A.H. and files this action on behalf of A.H. in this Court. A.H. was a minor and a high school student attending East High School in the Madison Metropolitan School District at the time of the occurrence hereinafter described.

**<u>Answer</u>:   In answering paragraph 7 of the Complaint, MMSD admits that Patanne Coffey filed the Complaint and alleges that she is the parent and legal guardian of A.H. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

8.     Plaintiff Anna Hauser is an adult resident of the State of Wisconsin who resides at 645 E. Johnson St. # 202, Madison, WI 53704. Anna Hauser is the parent and legal guardian of Z.H., and files this action on behalf of her minor child Z.H. in this Court. Z.H. was a high school student attending East High School in the Madison Metropolitan School District at the time of the occurrence hereinafter described.

**<u>Answer</u>:   In answering paragraph 8 of the Complaint, MMSD admits that Anna Hauser filed the Complaint and alleges that she is the parent and legal guardian of Z.H. MMSD denies the remaining allegations in that it lacks information or**

knowledge sufficient to form a belief as to the veracity of the allegations.

9.      Defendant Madison Metropolitan School District ("MMSD") is a Wisconsin unit of local government located at 545 W. Dayton Street, Madison, WI 53703-1967, with the capacity to sue and be sued in this Court, and receives federal funding as a public education institution.

**Answer:     In answering paragraph 9 of the Complaint, MMSD admits the allegations.**

10.      Defendant Heidi Tepp ("Tepp") is an adult resident of Wisconsin, who at all times material hereto was employed by MMSD as the Director of Labor Relations.

**Answer:     In answering paragraph 10 of the Complaint, MMSD admits that Heidi Tepp is an adult who was employed by MMSD as Director of Labor Relations. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

11.      Tepp was responsible for approving the placement and use of the hidden cameras that are the subject of this complaint, inside of hollowed-out smoke detectors in Rooms 127 and B32 H of Madison East High School, in an attempt to catch a third-shift custodian sleeping on the job.

**Answer:     In answering paragraph 11 of the Complaint, MMSD admits that Tepp approved the use of concealed cameras for the purpose of  monitoring a third shift custodian thought to be sleeping on the job. MMSD denies all remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

12.      Defendant Joe Anderson ("Anderson") is an adult resident of the State of Tennessee, who at all times material hereto was an adult resident of the State of Wisconsin, employed by MMSD as an Electrical Engineer.

**Answer:  In answering paragraph 12 of the Complaint, MMSD admits that Jo Anderson is an adult who was employed by MMSD as Manager of Electrical Technology. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

13.     Anderson conceived of the idea to place the hidden cameras in certain locations around Madison East High School in an attempt to catch a third-shift custodian sleeping on the job, and directed one of East High School's electricians, Luke Frame, to install the hidden cameras in Rooms 127 and B32 H.

**Answer:  In answering paragraph 13 of the Complaint, MMSD admits that Anderson suggested the use of concealed cameras in areas of Madison East High School where the third shift custodian was likely to be sleeping. MMSD denies the remaining allegations.**

14.     Anderson was also one of only three individuals who could access the live-stream of the covert video recordings captured by the secret cameras in Rooms 127 and B32 H.

**Answer:  In answering paragraph 14 of the Complaint, MMSD admits that for a period of time Anderson was one of the MMSD employees who could access real time video from the concealed cameras mounted in certain locations within an MMSD school. MMSD denies any remaining allegations.**

15.     Defendant David Kapp ("Kapp") is an adult resident of the State of Wisconsin, who at all times material hereto was employed by MMSD as the Building Services Assistant Supervisor.

**Answer:  In answering paragraph 15 of the Complaint, MMSD admits that David Kapp is an adult who was employed by MMSD as Assistant Director of Building**

**Services. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

16.     Kapp sought permission from MMSD "legal" and Tepp, to install the hidden cameras in East high [sic] School, and directed an MMSD electrician and Forward Electric to install the cameras at Madison East High School in Rooms 127 and B32 H.

**Answer:   In answering paragraph 16 of the Complaint, MMSD admits that Tepp approved the installation of concealed cameras in Madison East High School. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

17.     Kapp admitted to viewing the video footage captured by the hidden cameras in Rooms 127 and B32 H and was one of the individuals who had access to the footage.

**Answer:   In answering paragraph 17 of the Complaint, MMSD admits that Kapp stated he viewed video footage recorded by certain cameras installed at Madison East High School and that Kapp was one of the MMSD employees who had access to the video footage. MMSD denies all remaining allegations.**

18.     Defendant Joseph Balles ("Balles") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as a Security Director at East High School.

**Answer:   In answering paragraph 18 of the Complaint, MMSD admits that Joseph Balles is an adult who was the School Safety and Security Coordinator for MMSD at the time that the cameras were installed within Madison East High School in 2019. MMSD denies that Joseph Balles was an employee of MMSD in September 2019 and that he was a Security Director at East High School. MMSD denies all remaining**

**allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

19.     Balles was one of the individuals who had access to the video footage captured by the cameras in Rooms 127 and B32 H.

**Answer:   In answering paragraph 19 of the Complaint, MMSD denies that Balles had access to the video footage captured by the cameras during the hours of 10:00 pm to 6:00 am.**

20.     Defendant Luke Frame ("Frame") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as an electrician at Madison East High School.

**Answer:   In answering paragraph 20 of the Complaint, MMSD admits that Luke Frame is an adult who was employed by MMSD as an Electrician at Madison East High School. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

21.     Frame was responsible for installing the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer:   In answering paragraph 21 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

22.     Defendant Mark Brown ("Brown") is an adult resident of the State of Wisconsin who at all times material to this Complaint was employed by MMSD as the Head of Security.

**Answer:   In answering paragraph 22 of the Complaint, MMSD admits that Mark Brown is an adult who was employed by MMSD as Director of Safety and Security.**

**MMSD denies that Brown was Head of Security. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

23.      Brown was responsible for coordinating the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer: In answering paragraph 23 of the Complaint, MMSD denies the allegations.**

24.      Defendant Mathew Bell ("Bell") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as General Counsel.

**Answer:   In answering paragraph 24 of the Complaint, MMSD admits that Matthew Bell is an adult resident who was employed by MMSD as General Counsel. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

25.      Bell was responsible for approving the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer:   In answering paragraph 25 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

26.      Defendant Jeff Knutsen ("Knutsen") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD.

**Answer:   In answering paragraph 26 of the Complaint, MMSD admits that Jeff Knutsen is an adult who was employed by MMSD. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to**

9

**the veracity of the allegations.**

27.     Knutsen was one of several individuals responsible for approving the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer: In answering paragraph 27 of the Complaint, MMSD denies the allegations.**

28.     Upon information and belief, Defendant Haley A. Gausmann ("Gausmann") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD.

**Answer:   In answering paragraph 28 of the Complaint, MMSD admits that Haley Gausmann is an adult who is employed by MMSD. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

29.     Gausmann was one of several individuals responsible for approving the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer: In answering paragraph 29 of the Complaint, MMSD denies the allegations.**

30.     Defendant John Hagen ("Hagen") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as a Custodial Supervisor.

**Answer:   In answering paragraph 30 of the Complaint, MMSD admits that John Hagen is an adult who was employed by MMSD as Custodial Supervisor. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

31.     Hagen was one of several individuals responsible for coordinating the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer:   In answering paragraph 31 of the Complaint, MMSD admits that Hagen was involved in the process of installation of cameras at Madison East High School in 2019. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

32.     Defendant Jeff Fischer ("Fischer") is an adult resident of the State of Wisconsin who at all times material hereto was employed by MMSD as a Custodial Supervisor.

**Answer:   In answering paragraph 32 of the Complaint, MMSD admits that Jeff Fisher is an adult resident who was employed by MMSD as a Custodial Supervisor. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

33.     Fischer was one of several individuals responsible for coordinating the installation of the hidden cameras at Madison East High School in Rooms 127 and B32 H.

**Answer:   In answering paragraph 33 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

34.     At all times material hereto, each Defendant described in paragraphs 8 through 31 was acting within the scope of his or her employment with MMSD and acting under color of state law. Each such defendant is sued in their individual capacity.

**Answer:   In answering paragraph 34 of the Complaint, MMSD admits that Plaintiffs have made claims against named Defendants in their individual capacities and denies the remaining allegations in that they call for legal conclusions requiring no response.**

### IV. ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

35.    Paragraphs 1 through 34 are re-alleged and incorporated by reference therein.

**Answer:   In answering paragraph 35 of the Complaint, MMSD incorporates its answers to paragraphs 1 through 34 of the Complaint.**

36.    MMSD has maintained a pattern and practice of installing and using hidden cameras, housed in inconspicuous devices, to surreptitiously record its students and employees.

**Answer:   In answering paragraph 36 of the Complaint, MMSD denies the allegations.**

37.    Upon information and belief, secret surveillance cameras have been used at Madison Schools over the course of the past ten years, apparently in violation of express MMSD policy.

**Answer:   In answering paragraph 37 of the Complaint, MMSD admits that two concealed cameras were installed within Madison East High School. MMSD denies the remaining allegations.**

38.    MMSD's pattern and practice involved approving the placement of hidden cameras in places where students maintained a reasonable expectation of privacy in their unclothed bodies.

**Answer:   In answering paragraph 38 of the Complaint, MMSD denies that it has a pattern and practice of installing hidden cameras and denies the remaining allegations.**

39.    The surreptitious surveillance giving rise to this Complaint, provides one such example of MMSD's pattern and practice.

**Answer:   In answering paragraph 39 of the Complaint, MMSD denies that it has a pattern and practice of installing hidden cameras and denies the remaining allegations.**

40.     On or about Saturday August 24, 2019, Anderson arrived at Madison East High School in the early morning hours to complete an assignment.

**Answer:  In answering paragraph 40 of the Complaint, MMSD admits that Anderson was at Madison East High School in the early morning hours of August 24, 2019 in connection with his work responsibilities and denies the remaining allegations.**

41.     Anderson observed what he thought was a third-shift custodian sleeping in the backseat of his vehicle during his 10:00 p.m. to 6:00 a.m. shift.

**Answer:  In answering paragraph 41 of the Complaint, MMSD admits that Anderson reported seeing  a third shift custodian in the backseat of a car during the custodian's 10:00 pm to 6:00 am shift that Anderson thought might be sleeping.**

42.     Anderson subsequently told Kapp and Balles of his suspicion.

**Answer:  In answering paragraph 42 of the Complaint, MMSD admits that Anderson informed Messrs. Kapp and Balles of his belief that a custodian was sleeping at a time when he should have been performing the duties of his position.**

43.     Between September 3 and September 6, 2019, Anderson, Kapp, and Balles, sought approval from various MMSD officials, including Tepp and MMSD Legal, to place hidden cameras in locations around East High School to catch the third-shift custodian sleeping on the job.

**Answer:   In answering paragraph 43 of the Complaint, MMSD admits that between August 24, 2019 and September 6, 2019 approval was sought from Tepp to install concealed cameras within Madison East High School for the purpose of monitoring a custodian. MMSD denies the remaining allegations in that it lacks information or**

**knowledge sufficient to form a belief as to the veracity of the.**

44.     Between September 3 and September 6, 2019, Anderson, Kapp, and Balles collaborated with various employees of MMSD, including Defendants Hagen, Fischer and Brown in deciding where to place the hidden cameras.

**Answer:  In answering paragraph 44 of the Complaint, MMSD denies the allegations.**

45.     Tepp, Knutsen, Gausmann, and MMSD General Counsel Bell, gave Anderson, Kapp, and Balles approval to install the hidden cameras in hollowed out smoke detectors in at least two locations within East High School: (1) inside a coach's office (a room known as B32 H) in a boy's locker room; and, (2) inside Room 127, a room used for working with students with disabilities.

**Answer:  In answering paragraph 45 of the Complaint, MMSD denies the allegations.**

46.     Room 127 of East High School contained a changing cot and was used by MMSD employees to work with students with disabilities as a bathroom and changing area. The use for which Room 127 was put to was something which all of the Defendants knew or which they recklessly disregarded.

**Answer:   In answering paragraph 46 of the Complaint, MMSD admits that Room 127 of Madison East High School contained a changing cot that was used by MMSD employees to work with students with disabilities as a changing area during certain parts of the school day. MMSD denies the remaining allegations in that they call for legal conclusions requiring no response.**

14

47.     Plaintiffs A.H., and Z.H. used Room 127 for changing clothes and undergarments during the school day, and as a bathroom. At times during these processes, the Plaintiffs would be unclothed, having their undergarments changed, and having feces and urine cleaned off of their bodies.

**Answer:     In answering paragraph 47 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

48.     Based on its express policies and the actions of MMSD and its employees, MMSD and its employees led the Plaintiffs to believe that Room 127 was a private place where the Plaintiffs could change and not be observed or recorded. Room 127 was a locked room, only accessible by use of a key. The window on the door of Room 127 was frosted and could not be seen through. Plaintiffs also had a reasonable expectation that they would not be observed, filmed, or recorded in Room 127, and that there would be no hidden cameras present in Room 127.

**Answer:     In answering paragraph 48 of the Complaint, MMSD admits that in September 2019, at particular times, Room 127 was a locked room, intended to only to be accessed through use of a key. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

49.     Between September 3 and September 6, 2019, Anderson, Kapp, and Balles collaborated with several MMSD employees including Frame, Gausmann, Knutson, and one or more employees of a private contractor, Forward Electric, to place the hidden cameras in Rooms 127 and B32 H.

**Answer:  In answering paragraph 49 of the Complaint, MMSD admits that Anderson, Kapp, Balles, Frame,  and one or more employees of private contractor Forward Electric had knowledge of the installation of two concealed cameras within Madison East High School in 2019. MMSD denies the remaining allegations.**

50.      On September 6, 2019, Frame installed the hidden cameras in hollowed out smoke detectors in Rooms 127 and B32 H.

**Answer:   In answering paragraph 50 of the Complaint, MMSD admits that cameras were placed in hollowed out smoke detectors within two locations within Madison East High School on or about September 6, 2019. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

51.      After Frame installed the cameras in the smoke detectors, employees from Forward Electric came to Madison East High School to "hardwire" the cameras. Frame then gave Forward Electric a laptop to aim the cameras at the desired targets. Forward Electric aimed the hidden camera in Room 127 at a cot in such a way as to capture video recordings of students with disabilities, including the Plaintiffs A.H., Z.H., in states of undress while on or near the cot.

**Answer:  In answering paragraph 51 of the Complaint, MMSD denies that the camera installed within Madison East High School during 2019 was set to record during hours when students would be present. MMSD denies the remaining allegations in that it lacks knowledge or information sufficient to form a belief as to the veracity of the allegations.**

52.      On September 6, 2019, MMSD employee Alex Blohowiak set up an IP address so that the images captured by the cameras could be viewed live and remotely by anyone who knew

or determined the appropriate IP address and knew or could determine what the password was.

**Answer:   In answering paragraph 52 of the Complaint, MMSD admits that on or about September 6, 2019 Blohowiak set up an IP address for the two cameras installed within Madison East High School in September 2019 and denies the remaining allegations.**

53.   The hidden cameras were also connected to the MMSD computer system.

**Answer:   In answering paragraph 53 of the Complaint, MMSD admits that the cameras installed in Madison East High School in September 2019 were on the MMSD computer network and connected by IP address and password to a specific DVR that had restricted access.**

54.   The hidden cameras were always recording.

**Answer: In answering paragraph 54 of the Complaint, MMSD denies the allegations.**

55.   On September 6, 2019, Anderson gave Balles and Kapp the IP address and password to access the cameras' live-feed and recorded images.

**Answer:   In answering paragraph 55 of the complaint, MMSD admits that Anderson gave Kapp the password to access the DVR being recorded to, during hours when students would not be present, by the cameras installed at Madison East High School in September 2019. MMSD denies the remaining allegations.**

56.   Anderson tasked Kapp with viewing the recorded video footage captured by the cameras.

**Answer: In answering paragraph 56 of the Complaint, MMSD denies the allegations.**

57.     Kapp viewed the video footage captured by the secret cameras in Room 127 and B32 H.

**Answer:   In answering paragraph 57 of the Complaint, MMSD admits that Kapp viewed video footage recorded by the two cameras installed at Madison East High School in September 2019.**

58.     Between at least September 6, 2019, and September 30, 2019, Plaintiffs A.H. and Z.H. used Room 127 and would have been captured by the secret camera in Room 127 in various states of undress.

**Answer:   In answering paragraph 58 of the Complaint, MMSD denies the allegations.**

59.     During this time, Plaintiffs A.H. and Z.H. were minors.

**Answer:   In answering paragraph 59 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

60.     It is unknown how long the cameras in Room 127 and B32 H were recording.

**Answer:   In answering paragraph 60 of the Complaint, MMSD denies the allegations.**

61.     Even after MMSD stopped investigating the allegedly sleeping employee in fall of 2019, it left the secret cameras in place.

**Answer:   In answering paragraph 61 of the Complaint, MMSD denies the allegations as stated in that the allegations imply that the cameras continued to record subsequent to the investigation.**

62.     Frame told Madison Police that he "took the cameras out of service" sometime in 2020, but left them in place and wired so that they still produced a live feed even though they were no longer recording. Frame told police that to view the live feed one would have to know the correct IP address and password.

**Answer:     In answering paragraph 62 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

63.     Upon information and belief, between September 2019, and July of 2020, none of the Defendants revealed the existence of the hidden cameras or the fact of the filming to Madison East High School parents or teachers.

**Answer:     In answering paragraph 63 of the complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

64.     It is unknown whether then East High School Principal Mike Hernandez, who took a job in the District's central administration offices in the Fall of 2019, was ever made aware of the secret cameras.

**Answer:   In answering paragraph 64 of the Complaint, MMSD denies the allegations.**

65.     Upon information and belief, none of the involved Defendants disclosed the existence of the cameras to Principal Brendan Kearney, who became interim principle in the Fall of 2019.

**Answer:     In answering paragraph 65 of the Complaint, MMSD denies that Principal Brendan Kearney is unaware that concealed cameras were installed at Madison East**

**High School in September 2019. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

66.     In fact, on or around December 12, 2019, at 2:30 p.m., State of Wisconsin Department of Justice Division of Criminal Investigation (DOJ-DCI) Special Agent Crowe, who was investigating crimes related to the secret cameras that had been placed by former MMSD employee David Krutchen on DECA field trips, conducted a search at East High School for the purpose, in part, of looking for surreptitious recording devices or any other evidence that would be relevant to David Krutchen's unlawful acts.

**Answer:   In answering paragraph 66 of the Complaint, MMSD admits that the State of Wisconsin Department of Justice Division of Criminal Investigation executed a search warrant at Madison East High School on December 12, 2019 relating to allegations against former MMSD employee David Kruchten that he used concealed cameras on a DECA field trip. The MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

67.     Defendant Balles "assisted" Special Agent Crowe during the law enforcement search of school grounds.

**Answer:   In answering paragraph 67 of the Complaint, MMSD admits that Balles interacted with detectives relating to execution of the search warrant. The MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations**

68.     Balles knew of the surreptitious recording devices, and their location in hollowed-out smoke detectors, in Room 127 and B32 H.

**Answer:  In answering paragraph 68 of the Complaint, MMSD denies the allegations.**

69.     Special Agent Crowe did not discover the hidden cameras, and, [sic] the hidden cameras would not be discovered until months later in July of 2020.

**Answer:   In answering paragraph 69 of the Complaint, MMSD denies that there was a lack of awareness of the installation of the cameras within Madison East High School until July of 2020. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

70.     In July of 2020, several MMSD employees were installing a new camera system at East High School and discovered the hidden cameras in Room 127 and B32 H.

**Answer:  In answering paragraph 70 of the Complaint, MMSD admits that two concealed cameras installed at Madison East High School in September 2019, that had been deactivated approximately 3 to 5 days after installation, were discovered during an upgrade to its DVR system and physically removed during, upon information and belief, the week of June 29, 2020. MMSD denies the remaining allegations.**

71.     In July of 2020, the cameras in Room 127 and B32 H were allegedly fully removed. However, the hollowed-out smoke detectors in which they were concealed were apparently not removed or replaced.

**Answer:   In answering paragraph 71 of the Complaint, MMSD admits that two concealed cameras installed at Madison East High School in September 2019, that had been deactivated approximately 3 to 5 days after installation, were physically removed during, upon information and belief, the week of June 29, 2020. MMSD denies the remaining allegations.**

72.     On January 8, 2021, an MMSD Employee, Scott Wolfe stumbled upon a hollowed out-smoke detector underneath a table in Room B32 H. At that time, Scott Wolfe noticed a 2-inch hole drilled into the ceiling.

**Answer:   In answering paragraph 72 of the Complaint, MMSD admits that on January 8, 2021 employee Scott Wolfe stated that he found a smoke detector case on the floor of the Coach's office located in Gym Y 101B at East High School. MMSD denies the remaining allegations.**

73.     On January 8, 2021, Scott Wolfe informed Madison East High School Principal Kearney of his discovery.

**Answer:   In answering paragraph 73 of the Complaint, MMSD admits that on January 8, 2021, Wolfe informed MMSD employee Mark Brown of his discovery and denies all remaining allegations.**

74.     On January 8, 2021, Principal Kearney decided police involvement would be appropriate and called Madison Police to investigate.

**Answer:   In answering paragraph 74 of the Complaint, based upon information and belief, MMSD admits the allegations.**

75.     At that time, MMSD launched its own "internal investigation" of the hidden cameras at East High School.

**Answer:** **In answering paragraph 75 of the Complaint, MMSD admits the allegations.**

76.     MMSD engaged a private law firm, MWH Law Group LLP, and spent at least $30,000 to conduct an "investigation" into MMSD's use of covert surveillance devices in Rooms 127 and B3H, so that it could hide the results of the investigation from the public.

**Answer:** **In answering paragraph 76 of the Complaint, MMSD admits that it engaged MWH Law Group LLP, a private law firm, to provide legal advice and counsel relative to the concealed cameras matter at Madison East High School and that the fees charged by MWH Law Group LLP for its services  were approximately $30,000. MMSD denies the remaining allegations.**

77.     On May 6, 2021, Dr. Carlton Jenkins, MMSD Superintendent, emailed East High School parents, notifying them that MWH's "investigation" had concluded and summarizing MWH's findings.

**Answer:** **In answering paragraph 77 of the Complaint, MMSD admits that Superintendent Jenkins communicated with certain parents regarding the concealed camera matter at Madison East High School. MMSD denies the remaining allegations.**

## V. VIOLATIONS OF LAW

**A.     42 U.S.C. § 1983: Unreasonable Search in Violation of the Fourth Amendment, or alternatively Invasion of Privacy in Violation of the Fourteenth Amendment, Against All the Individual Defendants**

78.     Paragraphs 1 through 77 are re-alleged and incorporated by reference herein.

**Answer:** **In answering paragraph 78 of the Complaint, MMSD incorporates its answers to paragraphs 1 through 77.**

79.     At all times material hereto, the individual Defendants were "persons" for the purpose of 42 U.S.C. § 1983.

**Answer:   In answering paragraph 79 of the Complaint, MMSD neither admits nor denies the allegations in that they call for a legal conclusion requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

80.     At all times material hereto, the individual Defendants acted under the color of law.

**Answer:   In answering paragraph 80 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

81.     At all times material hereto, the individual Defendants acted within the scope of their respective employment and were actuated by a purpose to serve their employer, MMSD.

**Answer:   In answering paragraph 81 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

82.     At all times material hereto, Plaintiffs A.H. and Z.H. had a constitutionally protected right to be free from unreasonable searches and invasions of their protected privacy interests while under the tutelage of MMSD. This right is an obvious one that was or should have

been known to all Defendants.

**Answer:   In answering paragraph 82 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

83.     All of the individual Defendants knew the purpose of Room 127 and knew the purpose for which Room 127 was used.

**Answer:   In answering paragraph 83 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

84.     After exchanging emails containing maps of East High School, the Defendants knowingly selected Room 127 as a location to install one of the hidden cameras.

**Answer:   In answering paragraph 84 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

85.     The Defendants knowingly aimed the hidden camera in Room 127 at a cot that A.H. and Z.H. used for changing clothes, undergarments, and toileting purposes.

**Answer:   In answering paragraph 85 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

86.     Plaintiffs A.H. and Z.H. believed that Room 127 was a place where they could maintain a reasonable expectation of privacy in their unclothed bodies.

**Answer:**   **In answering paragraph 86 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

87.     Plaintiffs A.H. and Z.H. did not reasonably expect to be secretly recorded in states of undress while engaged in toileting functions.

**Answer:**   **In answering paragraph 86 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

88.     Plaintiffs A.H. and Z.H. were in Room 127 on many occasions, in states of undress and while engaged in toileting functions, when the camera in Room 127 was operating and recording.

**Answer:**  **In answering paragraph 88 of the Complaint, MMSD denies the allegations.**

89.     The recordings of A.H. and Z.H. were available to anyone who knew the correct IP address and could determine the password.

**Answer:**  **In answering paragraph 89 of the Complaint, MMSD denies the allegations.**

90.     By placing hidden cameras in Room 127 – a place the Defendants knew the Plaintiffs and other disabled students used to change clothes and undergarments – the Defendants violated the Plaintiffs' Fourteenth Amendment right to be free from covert surveillance of their unclothed bodies in a location where they possessed a reasonable expectation of privacy.

**Answer:   In answering paragraph 90 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

91.     By placing hidden cameras in Room 127, the Defendants also engaged in an unreasonable search of Plaintiffs A.H. and Z.H., in violation of the Fourth Amendment.

**Answer:   In answering paragraph 91 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

92.     The Defendants' placement of the hidden camera in Room 127 was not justified at its inception by any compelling necessity, such as concerns about student safety.

**Answer:   In answering paragraph 92 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

93.     MMSD's invasion of Plaintiffs A.H. and Z.H.'s privacy was wholly excessive in scope when compared to the purpose of MMSD's search: catching a custodian sleeping on the job after suspicion arose that he may have sleeping during work hours in his car.

**Answer:   In answering paragraph 93 of the Complaint, MMSD denies that it invaded the privacy of Plaintiffs. MMSD neither admits nor denies the remaining allegations in that they call for legal conclusions requiring no response. To the extent that an**

**answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

94.     After learning that they had been secretly recorded in states of undress and engaged in toileting functions, Plaintiffs A.H. and Z.H., experienced profound and severe emotional distress, pain, anxiety, and suffering after learning that they had been secretly recorded while they were naked, changed and while they were toileting resulting from Defendants' unreasonable search and invasion into their privacy

**<u>Answer</u>:   In answering paragraph 94 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies that Plaintiffs had been secretly recorded while they were naked, changed and while they were toileting. Further, MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

95.     Defendant MMSD is required to indemnify the individual Defendants pursuant to Wis. Stat. § 895.46 for any judgment entered against them because the Defendants were all acting within the scope of their employment when they committed these alleged acts and omissions.

**<u>Answer</u>:   In answering paragraph 95 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

**B.     42 U.S.C. § 1983: Monell Claim Against MMSD**

96.     Paragraphs 1 through 95 are realleged and incorporated by reference herein.

**Answer:   In answering paragraph 96 of the Complaint, MMSD incorporates its answers to paragraphs 1 through 95.**

97.      At all times material hereto, MMSD was a "person" for the purpose of 42 U.S.C. § 1983.

**Answer:  In answering paragraph 97 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

98.      MMSD designated Room 127 as a private place where students with disabilities could change clothes and undergarments.

**Answer:   In answering paragraph 98 of the Complaint, MMSD admits that, at times, Room 127 was used as a private area by students with disabilities. MMSD denies the remaining allegations.**

99.      MMSD led Plaintiffs to believe that Room 127 was a place where they could maintain a reasonable expectation of privacy in their unclothed bodies, and where they could reasonably expect to be free from covert surveillance.

**Answer:   In answering paragraph 99 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

100.    At all times material hereto, MMSD had in place Board of Education Policies 6702 and 6710, both of which expressly prohibited, albeit in broad and vague language, any person from using covert cameras without approval from the superintendent, or *any* camera, concealed or visible, to capture, record, transmit, or transfer an image or representation of a nude or partially nude person who is in any locker room, restroom, or designated changing area.

**Answer:** **In answering paragraph 100 of the Complaint, MMSD admits that it had in place policies and procedures at the time the cameras were installed at Madison East High School in September 2019. MMSD neither admits nor denies the remaining allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

101.    Board Policy 6702 provided that "cameras will be visible [sic] unless otherwise authorized by the Superintendent." And, that "[c]ameras shall not be placed in a restroom or locker room."

**Answer:** **In answering paragraph 101 of the Complaint, MMSD admits that MMSD Policies and Procedures: 6702 contains the quoted language.**

102.    Board Policy 6710 provided that "No person may use a camera, video recorder, cell phone, or any other recording device at any time to capture, record, transmit, or transfer an image or representation of a nude or partially nude person who is in any locker room, restroom, or other designated changing area."

**Answer:** **In answering paragraph 102 of the Complaint, MMSD denies the allegation.**

103.    Upon information and belief, despite these express policies, MMSD acted with deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. by

maintaining an informal pattern and practice of sanctioning the use of covert surveillance devices at Madison Public Schools.

> **Answer:  In answering paragraph 103 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

104.    In fact, according to a police report attributing statements to Attorney Tepp, secret surveillance cameras had been used at East High school in the "past ten years."

> **Answer:  In answering paragraph 104 of the Complaint, MMSD denies the allegations in that it lacks information sufficient to form a belief as to the veracity of the allegations.**

105.    Indeed prior to the covert surveillance giving rise to this litigation, former MMSD employee David Krutchen, the DECA field trip coordinator, had used the discretion vested in him by these broad and vague Board Policy directives, to supervise some of the students he was chaperoning on extended, overnight, DECA field trips, in part, by installing surreptitious surveillance cameras hidden in inconspicuous devices, such as hollowed-out smoke detectors, in students' hotel rooms, including in their hotel bathrooms, where they would reasonably be expected to appear in states of undress.

> **Answer:   In answering paragraph 105 of the Complaint, MMSD admits that former employee David Kruchten, a former DECA field trip chaperone, has admitted to historically concealing cameras in devices in students' hotel rooms during DECA field trips. MMSD denies the remaining allegations.**

106.    David Krutchen admitted to employing this practice for approximately seven years, beginning in or around 2014.

**Answer**:  **In answering paragraph 106 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

107.    David Krutchen chaperoned the Madison East High School DECA field trip to Minneapolis, Minnesota, from December 6, 2019, through December 8, 2019. On the last evening of this field trip, East High School students discovered one of David Krutchen's secret cameras recording devices in their hotel bathrooms. And, after reporting their discovery to David Krutchen and another MMSD employee chaperoning the field trip, Mr. Fanning, both of whom failed to report this discovery to police, several of the students' parents and hotel staff called the local Minneapolis police, on behalf of the students.

**Answer**:   **In answering paragraph 107 of the Complaint, MMSD denies that students initially reported the discovery of a concealed camera to Kruchten. MMSD further denies information or knowledge sufficient to form a belief as to how many students' parents and hotel staff called the local Minneapolis police and therefore denies the allegation. MMSD admits the remaining allegations.**

108.    David Krutchen's covert surveillance during the December 6-8, 2019, Minneapolis DECA field trip would ultimately culminate in his arrest and MMSD conducting an internal investigation into his alleged wrongdoing.

**Answer**:  **In answering paragraph 108 of the Complaint, MMSD denies that it conducted an internal investigation into Kruchten's alleged wrongdoing. MMSD admits the remaining allegations.**

109.    The investigation, led by Tepp, found no wrongdoing on behalf of the District, and the only wrongdoing it found on behalf of David Krutchen was that he had violated MMSD's

Social Media and Digital Communications Guidelines for Staff by using his personal cell phone to communicate with students and families while on field trips.

**Answer:   In answering paragraph 109 of the Complaint, MMSD admits that the independent administrative review concluded that there was no wrongdoing by the District in the areas reviewed. MMSD denies the remaining allegations.**

110.    MMSD did not discipline or terminate Mr. Krutchen.

**Answer:   In answering paragraph 110 of the Complaint, MMSD admits the allegations.**

111.    Moreover, despite the aforementioned policies, Tepp and MMSD's general counsel expressly authorized the placement of the hidden cameras in Room 127 and B32 H.

**Answer:   In answering paragraph 111, MMSD admits that Tepp authorized the placement of two cameras at Madison East High School in September 2019 for the purpose of monitoring a third shift custodian and denies the remaining allegations.**

112.    MMSD had in place an actual pattern and practice of using hidden surveillance cameras as a method of supervision, in places where students, including Plaintiffs A.H. and Z.H. had a reasonable expectation of privacy in their unclothed bodies.

**Answer:   In answering paragraph 112 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

113.    Upon information and belief, despite these express policies, MMSD also acted with deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. by failing to train and supervise their respective employees on these express policies, and for failing to train and supervise their employees to not infringe Plaintiffs' constitutionally protected rights to be free

from unreasonable searches and invasions of privacy.

> **Answer:   In answering paragraph 113 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

114.    Upon information and belief, MMSD also acted with deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. by delegating final policymaking authority to Tepp, and MMSD legal, to approve the use of covert video surveillance at Madison Schools in locations where students possessed a reasonable expectation of privacy.

> **Answer:   In answering paragraph 114 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

115.    For example, in an email dated September 6, 2019, with the subject designated as "BOE Policy on Cameras," from Anderson to Balles, Tepp, Kapp, and others, Anderson stated:

> Only with prior approval can a camera that does not look like a camera be deployed. We have two going up at East next weekend. Their video will be placed on the BS DVR, which has limited access to Jo, Joe, Dave, and the electric shop . . . This project was approved by Heidi. This process will be used for each time we put these cameras this team know but it is the intent staff at the school do not know these cameras are in place.

> **Answer:   In answering paragraph 115 of the Complaint, MMSD admits that the referenced email contains the stated language and denies the remaining allegations. MMSD further answers that the email is a written document that speaks for itself and any mischaracterizations of the document is denied. MMSD denies all remaining allegations.**

116.    MMSD's deliberate indifference to the constitutionally protected rights of Plaintiffs A.H. and Z.H. was the moving force behind the violations of their constitutionally protected rights.

**Answer:**   **In answering paragraph 116 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

117.    As a direct and proximate cause of the Defendants' actions and omissions, Plaintiffs A.H., Z.H., Patanne Coffey, and Anna Hauser, experienced profound and severe emotional distress, pain, anxiety, and suffering.

**Answer:**   **In answering paragraph 117 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations.**

**C.**    **Violation of Wis. Stat. § 995.50(2)(a)**

118.    Paragraphs 1 through 117 are re-alleged and incorporated by reference herein.

**Answer:**   **In answering paragraph 118 of the Complaint, MMSD incorporates its answers to paragraphs 1 through 117.**

119.    The Defendants knew the purpose of Room 127.

**Answer:**   **In answering paragraph 119 of the Complaint, MMSD admits that it knew the purpose of Room 127. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

120.    The Defendants led the Plaintiffs to believe that Room 127 was a private place where they could change their clothing free from surveillance by covert recording devices.

**Answer:**   **In answering paragraph 120 of the Complaint, MMSD admits that Room 127 was a place where students with disabilities could, at times, change their underclothes. MMSD denies that students with disabilities were ever surveilled with**

**covert recording devices while in Room 127. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

121.    Plaintiffs A.H. and Z.H. possessed a reasonable expectation of privacy in their unclothed bodies while in Room 127.

**Answer:   In answering paragraph 121 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

122.    The Defendants knowingly aimed a hidden video camera at the cot in Room 127 used by Plaintiffs A.H. and Z.H. while in states of undress.

**Answer:   In answering paragraph 122 of the Complaint, MMSD denies the allegations.**

123.    After the Defendants' installation of the camera on or about September 6, 2019, the camera in Room 127 was always recording.

**Answer:   In answering paragraph 123 of the Complaint, MMSD denies the allegations.**

124.    Plaintiffs A.H. and Z.H. were in Room 127 when the cameras were functional and recording.

**Answer:   In answering paragraph 124 of the Complaint, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

125.     The images captured by the camera in Room 127 were accessible to anyone who knew the correct I.P. address and could determine the password, and Kapp did in fact access the recorded images.

**Answer:   In answering paragraph 125 of the Complaint, MMSD admits that Kapp viewed recording from the two cameras taken during the hours of 10:00 pm to 6:00 am at Madison East High School in September 2019. MMSD denies the remaining allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

126.     The Defendants intentionally intruded upon the privacy of Plaintiffs A.H. and Z.H. in a manner that was highly offensive to a reasonable person, and the intrusion occurred in a location where the Plaintiffs, and any reasonable individual, would possess a reasonable expectation of privacy, in violation of Wis. Stat. § 995.50(2)(a).

**Answer:   In answering paragraph 126 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

127.     As a direct and proximate cause of the Defendants' actions and omissions, Plaintiffs A.H., Z.H., Patanne Coffey, and Anna Hauser, experienced profound and severe emotional distress, pain, anxiety, and suffering.

**Answer:   In answering paragraph 127 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it**

**lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

128.     Defendant MMSD is required to indemnify the individual Defendants pursuant to Wis. Stat. § 895.46 for any judgment entered against them because the Defendants were all acting within the scope of their employment when they committed these acts and omissions.

**Answer:   In answering paragraph 128 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

## VI. DAMAGES

**1.     Compensatory or Presumed Damages**

129.     By virtue of the unlawful actions alleged above, Plaintiffs A.H. and Z.H. sustained emotional distress, pain and suffering, public humiliation and embarrassment, and other damages for which each of them should be compensated in an amount deemed just by the Court.

**Answer:   In answering paragraph 129 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

**2.     Punitive Damages**

130.     Because of the acts of the individual defendants herein alleged were carried out maliciously or with reckless disregard for the Plaintiffs' fundamental rights, the Plaintiffs seek an

award of punitive damages against the individual defendants to deter them, and others similarly situated, from committing similar wrongful acts in the future.

**Answer:   In answering paragraph 130 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

## VII. CONDITIONS PRECEDENT

131.    All conditions precedent to this action, within the meaning of Rule 9(c), Fed. R. Civ. Pro., have been performed or have otherwise occurred.

**Answer:   In answering paragraph 131 of the Complaint, MMSD neither admits nor denies the allegations in that they call for legal conclusions requiring no response. To the extent that an answer may be required, MMSD denies the allegations in that it lacks information or knowledge sufficient to form a belief as to the veracity of the allegations.**

## AFFIRMATIVE DEFENSES

1.    Plaintiffs have failed to state a claim against the MMSD upon which relief can be granted.

2.    The Plaintiffs fail to state an actionable claim for invasion of privacy under 42 U.S.C. § 1983.

3.    Plaintiffs cannot establish that any acts or non-acts of the MMSD caused Plaintiffs' constitutional deprivations, if any.

4. To the extent that Plaintiffs are attempting to assert claims under *Monell v. Dept. of Social Services of New York City*, 436 U.S. 658 (1978), they have failed to state a claim upon which relief can be granted.

5. The MMSD is not liable under 42 U.S.C. § 1983 for a constitutional injury inflicted by its employees merely because of the employer/employee, or respondeat superior, relationship.

6. The MMSD states that to the extent Plaintiffs base any of their claims on grounds other than 42 U.S.C. § 1983, the amount of recovery by Plaintiffs for any damage or injury may not exceed $50,000.00 and no punitive damages are recoverable, as provided by Wis. Stat. § 893.80(3) or other law.

7. Plaintiffs may have failed to mitigate their damages as required by law.

8. The MMSD alleges that, to the extent Plaintiffs base any of their claims on grounds other than 42 U.S.C. § 1983, it is immune from liability under Wis. Stat. § 893.80(4) or other law.

9. Plaintiffs' claims are barred in whole or in part based on their failure to exhaust administrative remedies and/or satisfy all conditions precedent to the commencement of this action.

10. The MMSD states to the extent Plaintiffs base their claims on any grounds other than 42 U.S.C. § 1983, the claims are barred for failure to satisfy the requirements of Wis. Stat. § 893.80(1d) or other law.

11. Plaintiffs' injuries and/or damages may have been caused in whole or in part by the acts or omissions of persons other than the MMSD.

12. Plaintiffs' injuries and/or damages may have been proximately caused by intervening and/or superseding actions or causes which were not under the MMSD's control.

13. The MMSD is not responsible for any intentional act of any of its agent or employees pursuant to Wis. Stat. § 893.80.

14. No constitutional violation resulted from a practice, policy or custom of the MMSD.

15. Any injury or damage to Plaintiffs were not caused by a practice, policy or custom of the MMSD.

16. Plaintiffs are not entitled to compensatory damages against the MMSD.

17. The MMSD's actions were made in good faith and not motivated by reckless disregard or intent to harm.

18. Plaintiffs are not entitled to punitive damages against the MMSD.

19. The MMSD reserves all defenses against an award of punitive damages, if any is made, which indicates an influence of passion or prejudice or otherwise is excessive as protected by the Constitution, statutes and case law of the State of Wisconsin and federal law, as well as all defenses against any award that is grossly excessive in violation of the Due Process Clause and other guarantees afforded by the Constitution and amendments to the Constitutions of the United States and of the State of Wisconsin.

20. Plaintiffs' claims may be barred by the applicable statute of limitations.

21. Plaintiffs' claims may be barred by the doctrine of estoppel.

22. Plaintiffs may have waived some or all of their claims.

23. Plaintiffs' claims are barred to the extent that there is no causal connection between the events alleged in the Complaint and any damages they allegedly suffered.

24. Plaintiffs' Complaint is barred, in whole or in part, because their own acts or omissions caused or contributed to any alleged losses or injuries.

25. The MMSD is not responsible for any act of its agents or employees committed outside the scope of their employment.

26. The MMSD is not liable for the acts of its agents or employees that it did not direct, authorize, or ratify.

27. Punitive damages are not recoverable against the MMSD pursuant to Wis. Stat. § 893.80.

28. Plaintiffs' recoverable damages, if any, against the MMSD are limited under Wis. Stat. § 893.80.

29. The MMSD instituted reasonable and effective policies and procedures designed to safeguard students.

30. The doctrines of absolute, qualified, or other forms of immunity may shield some or all Defendants.

31. Plaintiffs cannot prevail on their state law invasion of privacy claim because the challenged actions of the MMSD were privileged.

32. The Plaintiffs did not have a reasonable expectation of privacy in the areas in question.

33. Any and all of Plaintiffs' demands for attorneys' fees or costs pursuant to any 42 U.S.C. § 1983 claims against the MMSD should be dismissed because Plaintiffs have failed to allege facts warranting, and the actual facts of the case do not warrant, an award of attorneys' fees or costs.

34. Plaintiffs' claims are barred to the extent they failed to comply with the requirements of Wis. Stat. § 893.80.

35. The MMSD reserves the right to amend this Answer to Plaintiffs' Complaint and raise any additional defenses, including affirmative defenses, determined through further investigation or discovery.

Dated this 1st day of August, 2022.

MWH LAW GROUP LLP

By:   *s/ Emery K. Harlan*
Emery K. Harlan
WI State Bar No. 1000240
735 N. Water Street, Suite 610
Milwaukee, WI 53202
(414) 436-0353 Phone
(414) 436-0354 Facsimile
emery.harlan@mwhlawgroup.com

**COUNSEL FOR DEFENDANT
MADISON METROPOLITAN SCHOOL
DISTRICT**